**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMASINA YVETTE MEEKS-OWENS, | |
| Plaintiff, | CIVIL ACTION NO. 3:07-CV-0059 |
| v. | (JUDGE CAPUTO) |
| INDYMAC BANK, F.S.B., LISA MARIE'S APPRAISAL SERVICE, INC., LISA MARIE GIBSON, MOUNTAIN VALEY ABSTRACT, and ANITA M. PETERSON, | (MAGISTRATE JUDGE MANNION) |
| Defendants. | |

## <u>MEMORANDUM</u>

Presently before the Court are Magistrate Judge Malachy E. Mannion's Report and Recommendation (Doc. 14) and Defendants Mountain Valley Abstract, Inc., ("Mountain Valley") and Anita Peterson's Objections thereto. (Doc. 15).  The Magistrate Judge recommended that the Court grant in part and deny in part both Mountain Valley and Peterson's Motion to Dismiss (Doc. 3) and Defendant Indymac Bank, F.S.B. ("Indymac")'s Motion for Judgment on the Pleadings (Doc. 6).  Because Plaintiff has stated claims upon which relief can be granted in Counts I, II, and III; because her claims in Counts IV and VI are barred by the applicable statutes of limitations; and because Plaintiff acknowledges that she cannot assert her claim of negligent misrepresentation (Count V) because her losses are solely economic, I will adopt the Magistrate Judge's Report and Recommendation.  I will therefore grant Mountain Valley and Peterson's Motion to Dismiss (Doc. 3) as to Counts IV, V, and VI and deny it as to Counts I and III, and I will grant Defendant Indymac's Motion for Judgment on the Pleadings (Doc. 6) as to

Counts IV, V, and VI and deny it as to Counts II and III.  The Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1964 and 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

Plaintiff Thomasina Yvette Meeks-Owens filed a Complaint (Doc. 1) alleging that Defendants engaged in a predatory lending scheme to induce her to purchase property in Blakeslee, Pennsylvania in January 2001.  (Report & Recommendation, Doc. 14, at 1-2.) Specifically, she alleges that Defendant Peterson was president and secretary of Defendant Mountain Valley, a title insurance company chosen by the companies that carried out the sale, the Parisi/Kishbaugh Companies, to be the settlement agent for closing.  (Doc. 1 ¶¶ 2, 17, 32, 34.)  Plaintiff alleges that Peterson prepared and reviewed all necessary paperwork for Plaintiff and attended the closing on January 11, 2001, but never provided Plaintiff with any closing documents prior to the closing itself and did not direct Plaintiff to complete all necessary documents to secure the mortgage loan.  (*Id.* ¶¶ 18, 33, 35).  Plaintiff also alleges that Peterson owed her a fiduciary to duty to protect her interests with regard to fees and paperwork involved in purchasing a home, but that no one ever disclosed or explained to Plaintiff, a first-time home buyer, many of the fees, taxes, and rates she would have to pay, and no one explained to her before closing that she would have to take out a second mortgage.  (*Id.* ¶¶ 95-105.)  Also in furtherance of the alleged conspiracy, Peterson did not provide Plaintiff with a copy of the HUD-1 Settlement Sheet at the time of closing, an overt act that permitted Plaintiff to be defrauded.  (*Id.* ¶ 118.)

2

Defendant Indymac, the bank that issued Plaintiff's mortgage loan, knew that the contract price and the mortgaged value of the property substantially exceeded, by more than thirty (30) percent, the market value of the property at time of purchase, Plaintiff alleges. (*Id.* ¶¶ 3, 40, 67.)  Further, although Indymac knew that Plaintiff qualified only for a sub-prime mortgage, it "engaged in a scheme to recruit mortgage business from first-time home buyers and minorities by telling these customers that they are receiving conventional loans when in fact these customers are receiving sub-prime mortgages which have market prices and interest rates far in excess of conventional mortgage rates." (*Id.* ¶¶ 41-43.)  Indymac provided Plaintiff with a mortgage loan without investigating her ability to repay the loan, after having received both an incomplete mortgage application and an inflated, "patently defective" appraisal, and after having known since 1999 that homes were being sold at inflated values in the Pocono region. (*Id.* ¶ 58-59, 107-10.)  In furtherance of the alleged conspiracy, Indymac took a number of overt acts, including receiving and adopting a HUD-1 Settlement Sheet that contained false statements; paying consideration to another bank, Nations 1st, for placement of the loan; and providing the mortgage loan without following its normal underwriting and due diligence procedures or confirming the source of the deposit money used in the purchase.  (*Id.* ¶¶ 113-18.)

Plaintiff further alleges that she was never advised of the relationships among all the Defendants; that she and the Defendants are persons within the meaning of 18 U.S.C. § 1961(3); that all Defendants constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4); that communications between Plaintiff and

representatives of Defendants using telephone wires and facsimile transmittal through telephone wires constitute a violation of federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343; and that during the last several years, during which time Plaintiff was defrauded, Defendants committed more than two (2) predicate acts of racketeering activity as defined by 18 U.S.C. § 1961(1) by acting with the Parisi/Kishbaugh Companies to sell homes at inflated values.  (*Id.* ¶¶ 50, 125-37.)

Plaintiff brought conspiracy claims under the Racketeering Influenced and Corrupt Organizations Protection act ("RICO") against all Defendants except Indymac in Count I, and against Indymac only in Count II.  She also brought, against all Defendants, claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("UTPCPL") (Count III), the Home Ownership and Equity Protection Act ("HOEPA") (Count IV), the Real Estate Settlement Procedures Act ("RESPA") (Count V), and state law claims of negligent misrepresentation (Count VI).

Defendant Indymac filed an Answer (Doc. 2) and a Motion for Judgment on the Pleadings (Doc. 6).  Defendants Mountain Valley and Peterson filed a Motion to Dismiss (Doc. 3).  Magistrate Judge Mannion issued a Report and Recommendation (Doc. 14) recommending that both motions be granted with respect to the HOEPA, RESPA, and negligent misrepresentation claims (Counts IV, V, and VI) and denied with respect to the RICO conspiracy claims (Count I for Defendants Mountain Valley and Peterson, Count II for Defendant Indymac) and the UTPCPL claims (Count III).  (Doc. 14.)

Defendants Mountain Valley and Peterson now object to the denial of their Motion to Dismiss the RICO and UTPCPL claims against them.  (Doc. 15.)  No responses to their Objections were filed.  This matter is ripe for disposition.

4

**STANDARDS OF REVIEW**

**I. Review of Magistrate Judge's Report and Recommendation**

Where objections to the magistrate judge's report are filed, the Court must conduct

a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d

1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections

are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  In making its

*de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual

findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *Owens

v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the

statute permits the Court to rely on the recommendations of the magistrate judge to the

extent it deems proper.  *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980);

*Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D.

Pa. 1994).  Uncontested portions of the report may be reviewed at a standard determined

by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at

7.  At the very least, the Court should review uncontested portions for clear error or

manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**II. Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of

a complaint, in whole or in part, for failure to state a claim upon which relief can be

granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible

5

on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007), meaning, enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

6

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

**III. Motion for Judgment on the Pleadings**

The standards for deciding a motion for judgment on the pleadings pursuant to Rule 12(c) and a motion to dismiss pursuant to Rule 12(b)(6) are identical. *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). Thus, the district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001). "[J]udgment will not be granted 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.' " *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (quoting *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). Like in a motion to dismiss, a court may consider matters of public record and "undisputedly authentic" documents attached by the moving party if relied upon by the other party. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). "Merely attaching documents to a Rule 12(c) motion does not convert it to a motion under Rule 56.... [I]n ruling on the motion a court generally has 'discretion to

7

address evidence outside the complaint.'" *CitiSteel USA, Inc. v. GE Co.*, 78 Fed. Appx. 832, 835 (3d Cir. 2003) (nonprecedential opinion) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002)).

## DISCUSSION

### I. Contested Recommendations

#### A. RICO Conspiracy Claim Against Mountain Valley and Peterson (Count I)

Count I of Plaintiff's Complaint (Doc. 1) alleges that Defendants, including Mountain Valley and Peterson, conspired to violate 18 U.S.C. § 1962(c)[1].  Plaintiff thus alleges that the Objecting Defendants violated 18 U.S.C. § 1962(d), under which it is unlawful for any person to conspire to violate subsections (a), (b), or (c).  To plead a conspiracy under § 1962(d), a "plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989) (abrogated on other grounds).  "Additional elements include agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity." *Id.* at 1166-67.

---

[1] 18 U.S.C. § 1962(c) provides:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Finally, a claim under § 1962(d) must include allegations that at least one of the alleged co-conspirators violated the relevant predicate subsection, which in this case is § 1962(c).  *See Lum v. Bank of America*, 361 F.3d 217, 227 n.5 (3d Cir. 2004) (upholding dismissal of § 1962(d) claim because plaintiff failed to adequately plead any substantive RICO violation) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1192 (3d Cir. 1993); *see also Pappa v. Unum Life Ins. Co. of Am.*, No. 3:07-CV-0708, 2008 WL 744820, at *16-17 (M.D. Pa. Mar. 18, 2008) (dismissing claim of conspiracy under § 1962(d) because Compliant failed to allege violation of § 1962(c)).  The Complaint need not, however, allege that each Defendant in the conspiracy claim himself violated the underlying substantive provision.  *See Smith v. Berg*, 247 F.3d 532, 537-38 (3d Cir. 2001) (citing *Beck v. Prupis*, 529 U.S. 494, 506-07 (2000) ("[A] plaintiff could, through a § 1964(c) suit for violation of 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962.")).

Thus, "a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise."  *Id.* at 538.  This is not to say that those who innocently "merely provide services" are liable for conspiracy under § 1962(d); rather, as the Third Circuit Court of Appeals explained, "liability will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." *Id.* at 537 n.11.

### 1. Direct Participation Not Necessary for § 1962(d) Liability

Defendants Mountain Valley and Peterson cite *Dongelewicz v. PNC Bank National Association*, 104 Fed. Appx. 811, 818 (3d Cir. 2004) for the proposition that in order for Plaintiff to plead that they are "co-conspirators in the alleged RICO scheme," "there must be a basis that a co-conspirator directly participated in the conspiracy and fraud," (Objections, Doc. 15 ¶ 3), and then argue that, based on the Complaint's allegations, they "did not directly participate in the fraudulent scheme which forms the basis of the Plaintiff's alleged RICO claim." (*Id.* ¶ 12.)

The *Dongelewicz* opinion discussed this requirement of direct participation, however, only in the context of the § 1962(c) claim in that case. The district court there had granted summary judgment on § 1962(c) claims in favor of a defendant that financed an allegedly fraudulent development scheme because that defendant "did not participate directly in the affairs of the enterprise." *See* 104 Fed. Appx. at 817 (citing district court's opinion denying motion for reconsideration). The appellate court upheld that decision, agreeing that the evidence did not support a conclusion that the financer-defendant "'conducted' the affairs of any 'enterprise,'" meaning, "participated in the operation of management of the enterprise itself," – a necessary element of a § 1962(c) claim under *Reves v. Ernst & Young. See id.* at 818 (citing *Reves*, 507 U.S. 170, 183 (1993)).

With regard to the § 1962(d) claim, on the other hand, the Third Circuit Court of Appeals clarified that "conspiracy liability under § 1962(d) does not require satisfaction of the *Reves* test, but is governed by the general principles of criminal conspiracy law, which requires only that the defendant 'share[s] a common purpose' with his co-

conspirators and 'knowingly agrees to facilitate a scheme, which includes the operation or management of a RICO enterprise.'" *Id.* (quoting *Smith*, 247 F.3d at 538).

### 2. Allegations Are Sufficiently Particularized

Plaintiffs allegations are sufficiently particularized, as they address "the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." *See Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).  Regarding the period of the conspiracy, Plaintiff alleged that the conspiracy began before 2001 and continued beyond the Plaintiff's closing.  Regarding the object of the conspiracy, Plaintiff alleged that the Objecting Defendants shared a common purpose with their co-conspirators "to bring the Plaintiff and other first-time home buyers, to the point of settlement for which the Defendants received substantial remuneration in the form of financing charges, servicing fees, and appraisal fees."  (Compl., Doc. 1 ¶ 148.)

Regarding certain actions taken by the alleged conspirators to achieve the purpose of the conspiracy, Defendants' argument that they "merely provided a service to the Plaintiff" (Objections, Doc. 15 ¶ 13) is premature in this Motion to Dismiss, as Plaintiff has alleged they did more.  She alleged, indeed, that they "knew of and agreed to the commission of numerous predicate acts by the Parisi/Kishbaugh Companies."  (*Id.* ¶ 149.)  Defendants argue that this allegation is merely an unsupported conclusion which should not be accepted as true: the Complaint, they argue, neither alleges which predicate acts they "knew of and agreed to," nor points to any "documents from which it can be concluded that the Objecting Defendants had an agreement with any co-conspirators as to the alleged fraudulent scheme, had knowledge of the alleged RICO

11

scheme or the activities performed in furtherance thereof, let alone the undisclosed predicate acts of mail or wire fraud." (Objections, Doc. 15 ¶ 8, 10, 11.)

As Magistrate Judge Mannion noted, however, the "numerous predicate acts by the Parisi/Kishbaugh Companies," which Defendants allegedly knew of and agreed to, are detailed earlier in the Complaint and incorporated by reference into the allegations against Mountain Valley and Peterson.  Those predicate acts include advertisements that used the United States mail and interstate wires, communications with Plaintiff through telephone wires, and communications with Plaintiff through facsimile transmittal through telephone wires, all done in furtherance of a scheme to defraud and which contained numerous false statements.  (*Id.* ¶¶ 136-37.)  These acts, done for the purpose of selling homes at inflated values since at least 2001, are acts that Plaintiff alleges the Objecting Defendants knew of and agreed to.  Further, Plaintiff specifically alleges that the Objecting Defendants knew of the inflated valuation of the property and knew that it would lead to Plaintiff having to pay higher points on the mortgage.  (*Id.* ¶ 151.)

I agree with the Magistrate Judge that these allegations are sufficient to put the Objecting Defendants on notice of the nature of the claim against them and of the grounds for that claim.  Therefore, I will overrule Defendants' Objections and deny their Motion to Dismiss with regard to Count I.

### B. UTPCPL Claim Against Mountain Valley and Peterson (Count III)

As I have not dismissed Count I, the Court does not lack subject matter jurisdiction over the state law UTPCPL claim in Count III.  I will therefore overrule Defendants' Objections and deny their Motion to Dismiss with regard to Count III.

**II. Uncontested Recommendations**

No party objected to Magistrate Judge Mannion's recommendations that both motions (Docs. 3 & 6) be granted with respect to the HOEPA (Count IV), RESPA (Count V), and negligent misrepresentation (Count VI) claims against the moving Defendants. The HOEPA claims (Count IV) were dismissed because they are barred by the one (1) year statute of limitations in 15 U.S.C. § 1640(e), and the negligent misrepresentation claims (Count VI) were dismissed because Plaintiff conceded that she cannot assert that claim where her alleged loss is solely economic.  (Report & Recommendation, Doc. 14, at 4-5.)  The RESPA claims (Count V) were dismissed because Plaintiff conceded that they were brought outside the one (1) year statute of limitations provided in 12 U.S.C. § 2614 and Magistrate Judge Mannion concluded that equitable tolling should not apply because according to Plaintiff's Complaint, she became aware of Defendants' misconduct on or about July 21, 2003.  (*Id.* at 11-12.)  Upon review for clear error, I will adopt the Magistrate Judge's recommendations to grant Defendants Mountain Valley and Peterson's Motion to Dismiss and grant Defendant Indymac's Motion for Judgment as a Matter of Law with regard to Counts IV, V, and VI.

Additionally, no party has objected to Magistrate Judge Mannion's recommendations that Indymac's Motion for Judgment as a Matter of Law be denied with respect the RICO conspiracy claim (Count II) and the UTPCPL claim (Count III).  Upon review of those recommendations for plain error or manifest injustice, I will adopt these recommendations and deny Defendant Indymac's Motion for Judgment as a Matter of Law with regard to Counts II and III.

13

**CONCLUSION**

After careful consideration, the Court will adopt the Magistrate Judge's Report and Recommendation (Doc. 14).  Therefore, Defendants Mountain Valley and Anita Peterson's Motion to Dismiss (Doc. 3) will be granted as to Counts IV, V, and VI and denied as to Counts I and III, and Defendant Indymac's Motion for Judgment on the Pleadings (Doc. 6) will be granted as to Counts IV, V, and VI and denied as to Counts II and III.

An appropriate Order follows.


 April 10, 2008                                        /s/ A. Richard Caputo
Date                                                         A. Richard Caputo
                                                             United States District Judge

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

THOMASINA YVETTE MEEKS-OWENS,

    Plaintiff,

        v.

INDYMAC BANK, F.S.B., LISA MARIE'S
APPRAISAL SERVICE, INC., LISA
MARIE GIBSON, MOUNTAIN VALEY
ABSTRACT, and ANITA M. PETERSON,,

    Defendants.

CIVIL ACTION NO. 3:07-CV-0059

(JUDGE CAPUTO)

(MAGISTRATE JUDGE MANNION)

<u>**ORDER**</u>

**NOW**, this <u>10th</u> day of April, 2008, upon review of Magistrate Judge Malachy E. Mannion's Report and Recommendation (Doc. 14), **IT IS HEREBY ORDERED** that:

(1) Defendants Mountain Valley Abstract, Inc., and Anita Peterson's Objections to the Magistrate Judge's Report and Recommendation (Doc. 15) are **OVERRULED**.

(2) The Report and Recommendation (Doc. 14) is **ADOPTED**.

(3) Defendants Mountain Valley Abstract, Inc., and Anita Peterson's Motion to Dismiss (Doc. 3) is **GRANTED** in part and **DENIED** in part, as follows:

    (a) The motion is **GRANTED** as to claims against Mountain Valley and Peterson in Counts IV, V, and VI, and those claims are **DISMISSED**.

    (b) The motion is **DENIED** as to claims against Mountain Valley and Peterson in Counts I and III, and those claims remain in the case.

(4)     Defendant Indymac Bank, F.S.B.'s Motion for Judgment on the Pleadings

(Doc. 6) is **GRANTED** in part and **DENIED** in part, as follows:

    (a)     The motion is **GRANTED** as to claims against Indymac in Counts IV,

        V, and VI, and those claims are **DISMISSED**.

    (b)     The motion is **DENIED** as to claims against Indymac in Counts II and

        III, and those claims remain in the case.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge