# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMASINA YVETTE MEEKS-OWENS | CIVIL ACTION NO. 3:07-CV-059 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF INDYMAC BANK, F.S.B., et. al. | |
| Defendants. | |

## MEMORANDUM

Three motions for summary judgment are presently before the Court from: (1) Defendants Mountain Valley Abstract and Annette Peterson (Doc 32), (2) Defendant Federal Deposit Insurance Corporation ("FDIC"), as Receiver of Indymac Bank, F.S.B. ("Indymac") (Doc. 35), and (3) Defendants Lisa Marie's Appraisal Service, Inc. and Lisa Marie Gibson (Doc. 39). For the reasons set forth in greater detail below, the Court will grant the Defendants' motions.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## BACKGROUND

On January 11, 2001, Plaintiff Thomasina Yvette Meeks-Owens purchased a home at 2212 Allegheny Drive, Blakeslee, PA from Parisi and Kishbaugh ("P&K") and their affiliated companies. (Doc. 34 ¶ 1; Doc. 36 ¶ 1; Doc. 43 ¶ 1; Doc. 45 ¶ 1.) With P&K's assistance, Plaintiff chose Nations First Mortgage Company ("Nation's First") as the broker for her loan transaction. (Doc. 34, ¶ 3; Doc. 36 ¶ 1; Doc. 43 ¶ 4; Doc. 45 ¶ 4.) Nation's First

selected Defendant Lisa Marie's Appraisal Service ("Lisa Marie's") as the appraiser for Plaintiff's loan transaction. (Doc. 36 ¶ 2; Doc. 43 ¶ 2; Doc. 45 ¶ 2.) Nation's First also contacted Mountain Valley Abstract to perform the closing on this transaction. (Doc. 34 ¶ 4.) Defendant Annette Peterson represented Mountain Valley Abstract at the January 11, 2001 closing and prepared documents used in that closing. (Doc. 34 ¶ 17; Doc. 43 ¶ 8; Doc. 45 ¶ 8.) At the closing, the Plaintiff executed a promissory note for one hundred eighty-five thousand, two hundred fifty dollars ($185,250) in favor of Indymac Bank, F.S.B. for a loan to purchase the property. (Doc. 36 ¶ 3.) As security for this promissory note, the Plaintiff executed a mortgage naming Indymac as beneficiary. (Doc. 36 ¶ 4.) In the fall of 2001, the Plaintiff became delinquent on her mortgage payments and, in February 2003, filed for bankruptcy. (Doc. 36 ¶ 6.) Following Plaintiff's bankruptcy filing, Indymac foreclosed on the property. (*Id.*)

On January 11, 2007, the Plaintiff filed a Complaint initiating the current case and bringing six (6) claims against the various defendants. (Compl., Doc. 1.) Specifically, Count I of Plaintiff's Complaint asserts a claim against all Defendants under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO") (Compl. ¶¶ 140-156); Count II asserts a RICO claim against Indymac Bank (*Id.* ¶¶ 157-168); Count III alleges that all Defendants violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*, (*Id.* ¶¶ 169-183); Count IV alleges that all Defendants violated the Federal Home Ownership and Equity Protection Act, 15 U.S.C. § 1639, ("HOEPA") (*Id.* ¶¶ 184-190); Count V alleges that all Defendants violated the Federal Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601, ("RESPA") (*Id*. ¶¶ 191-196);

and Count VI asserts a claim of negligent misrepresentation against all Defendants (*Id.* ¶¶ 196-201).

On April 10, 2008, the Court issued an Order (Doc. 16) adopting Magistrate Judge Mannion's Report and Recommendation (Doc. 14), thereby granting Defendants' motions to dismiss (Docs. 3 & 6) Plaintiff's Complaint with respect to Counts IV, V, and VI. In particular, Plaintiff's Count IV HOEPA and Count V RESPA claims were dismissed because Plaintiff conceded that she brought the claims outside the one (1) year statute of limitations established by 15 U.S.C. § 1640(e) and 12 U.S.C. § 2614. Plaintiff's Count VI claim for negligent misrepresentation was dismissed because Plaintiff conceded that she could not assert such a claim when her alleged loss was purely economic.

On December 12, 2008, Defendants Mountain Valley Abstract and Anita M. Peterson filed their Motion for Summary Judgment on Plaintiff's remaining RICO and UTPCPL claims (Doc. 32), along with a corresponding Brief in Support (Doc. 33) and Statement of Facts (Doc. 34). On December 13, 2008, Defendant FDIC, as Receiver of Indymac Bank, F.S.B., filed its Motion for Summary Judgment on Plaintiff's RICO and UTPCPL claims (Doc. 36), along with a corresponding Brief in Support (Doc. 37) and Statement of Uncontested Facts (Doc. 36). Finally, on December 31, 2008, Defendants Lisa Marie's Appraisal Service, Inc. and Lisa Marie Gibson filed their Motion for Summary Judgment on Plaintiff's RICO and UTPCPL claims (Doc. 39) on December 16, 2008 and filed an Amended Brief in Support (Doc. 41). Plaintiff filed Statements of Facts (Docs. 43, 45, 47) and Briefs in Opposition (Docs. 42, 44, 46) on January 13, 2009. On January 27, 2009 Defendant FDIC filed its Reply Brief (Doc. 48). On April 29, 2009, Defendants Lisa Marie's Appraisal Service and Lisa Marie Gibson filed a supplemental Brief in Support (Doc. 55) and, on April 30, 2009, the

3

Court heard oral arguments from all parties concerning the current motions for summary judgment. Defendants' motions for summary judgment have been thoroughly briefed and argued and are currently ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Plaintiff's claims under RICO (Counts I & II), and the UTPCPL (Count III), are based on Plaintiff's allegations that the appraisal conducted by Lisa Marie Gibson acting as Lisa Marie's Appraisal Service was fraudulent and inflated. (*See* Pl.'s Brs. in Opp., Docs. 42, 44, 46.) In response to the Defendants Peterson and Mountain Valley Abstract's motion for summary judgment, Plaintiff specifically states that

> the actions of all the Defendants with the Parisi/Kishbaugh Companies give rise to an inference (I) that [Defendants Peterson and Mountain Valley Abstract] agreed to commit predicate acts when they decided to act as the settlement/closing agent for a loan which had an inflated appraisal, advised the Plaintiff that she did not need a lawyer at the closing; and did not explain the closing documents to Plaintiff before she signed them or (ii) that [Defendants Peterson and Mountain Valley Abstract] knew that these predicate acts were part of racketeering activity. . ..

5

(Doc. 42, at 6.) Similarly, Plaintiff states in response to Defendant Indymac's motion that

> the actions of all the Defendants with the Parisi/Kishbaugh Companies give rise to an inference (I) that IndyMac Bank agreed to commit predicate acts when it decided to work with the Parisi/Kishbaugh Companies and offer a mortgage loan to the Plaintiff, (ii) that IndyMac Bank selected Lisa Marie Gibson and Lisa Marie's to conduct an appraisal of the Property and to inflate the market value of the Property to further the conspiracy or (ii) that IndyMac Bank knew that these predicate acts were part of racketeering activity. . ..

(Doc. 44, at 6.) Finally, in response to Defendant Lisa Marie Gibson's current motion, Plaintiff states that

> the actions of all the Defendants with the Parisi/Kishbaugh Companies give rise to an inference (I) that Lisa Marie Gibson and Lisa Marie's agreed to commit predicate acts when it decided to work with the Parisi/Kishbaugh Companies and IndyMac Bank to inflate the appraisal it performed on the Plaintiff's Property, (ii) that IndyMac Bank selected Lisa Marie Gibson and Lisa Marie's to conduct and appraisal of the Property and to inflate the market value of the Property to further the conspiracy or (ii) that Lisa Marie Gibson and Lisa Marie's knew that these predicate acts were part of racketeering activity. . ..

(Doc. 46, at 6.) Thus, without evidence that the appraisal performed by Defendants Lisa Marie Gibson and Lisa Marie's Appraisal Service was fraudulent, the Plaintiff has no basis for recover under Counts I through III of her Complaint. Simply stated, without evidence of an inflated appraisal, Plaintiff cannot show that she sustained any injury attributable to wrongful conduct by the Defendants. *See Hearns v. Parisi*, 548 F. Supp. 2d 132, 137 (M.D. Pa. 2008)(Vanaskie, J.)

"The Racketeer Influenced and Corrupt Organizations Act. . ., 18 U.S.C. §§ 1961-1968, provides a private civil action to recover treble damages for injury 'by reason of a violation of' its substantive provisions." *Sedima v. Imex*, 473 U.S. 479, 481 (1985) (quoting 18 U.S.C. § 1964(c)). "RICO takes aim at 'racketeering activity,' which it defines as any act 'chargeable' under several generically described state criminal laws, any act 'indictable'

under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law. § 1961(1)." *Id.* "A violation of § 1962(c). . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 496.

> Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise. Those acts are, when committed in the circumstances delineated in § 1962(c), "an activity which RICO was designed to deter." Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.

*Id.* at 497. Similarly, "[i]n order to establish a [RICO] conspiracy claim [under 18 U.S.C. § 1962(d)], the plaintiffs must plead and prove '1) and agreement to commit the predicate acts; 2) knowledge of those acts as part of a pattern of racketeering in violation of [18 U.S.C. § 1962](a), (b) or (c); and 3) an injury proximately caused by the conspiracy." *American Indep. Co. v. Lederman*, No. 97-4153, 200 U.S. Dist. LEXIS 12351, at * 32 (E.D. Pa. Aug. 25, 2000) (quoting *City of Rome v. Glanton*, 958 F. Supp. 1026, 1043 (E.D. Pa. 1997)). "In accord with the general principles of criminal conspiracy law, a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001). The Third Circuit Court of Appeals has further stated that "the text of the RICO statute does not encompass a private cause of action for aiding and abetting a RICO violation." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 657 (3d Cir. 1998); *see accord Dongelewicz v. PNC Bank Nat'l Ass'n*, 104 Fed. Appx. 811 (3d Cir. 2005) (finding that when a bank provided financing to an alleged RICO enterprise, the bank did not conduct the

7

affairs of any enterprise, did not directly participate in fraud or extortion, and did not violate § 1962(d)).

"The question of whether a plaintiff made out a claim of injury to his or her business or property as a result of a pattern of racketeering activity in violation of RICO has been described as a standing issue." *Hearns*, 548 F. Supp. 2d at 137 (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 520 (3d Cir. 1998)). "Along with the Article III constitutional and prudential standing requirements, a plaintiff seeking recovery under RICO must satisfy the additional standing requirement of injury to property or business as a proximate result of the alleged pattern of racketeering activity." *Id.* (citing *Maio*, 221 F.3d at 482.)

Similarly, with respect to Plaintiff's Count III claims, "[r]ecovery on a fraud claim. . . under the UTPCPL, is likewise dependent upon proof of 'the difference in value between the real, or market value, of the property at the time of the transaction and the higher, or fictitious value, which the buyer was induced to pay for it.'" *Id.* (citing *Skurnowicz v. Lucci*, 2002 PA Super 140, 798 A.2d 788, 795 (Pa. Super. Ct. 2002)). Accordingly, to either have standing in the current action or to recover based on the substantive merits, Plaintiff will need to provide proof of a fraudulent appraisal. *See Id.* at 138.

In support of her claims that her property was overvalued at one hundred ninety-five thousand ($195,000) prior to the January 11, 2001 closing, Plaintiff has submitted an appraisal conducted in June 2003 by Thomas G. McKeown, which valued Plaintiff's property at one-hundred eighty-two thousand dollars ($182,000). As Defendant Lisa Marie Gibson accurately notes, the McKeown appraisal does not, by itself, establish that Plaintiff's property

8

was overvalued on January 11, 2001. (*See* Def. Gibson Supp. Br. in Supp., Doc. 54.) "The mere fact that an appraiser estimated a value to the property that was [93%] of the value assigned two and one-half years earlier does not mean that the first appraisal was fraudulent." *Id.* at 138.

In the current case, Plaintiff has provided no evidence suggesting defects in the information considered or the methodology used by Lisa Marie Gibson. *See id.* at 138; *compare United States v. Cassiere*, 4 F.3d 1006, 1013-15 (1st Cir. 1993) (detailing evidence of discrepancies and irregularities in appraiser's reports, including falsification of property conditions and comparable properties, sufficient to support an inference of fraud). Nor has Plaintiff offered any expert opinions stating that the Gibson appraisal in this case did not satisfy industry standards or used inappropriate information. *See Hearns*, 548 F. Supp. 2d at 138; *compare United States v. Owens*, 301 F.3d 521, 525 (7th Cir. 2002) (evidence that appraisal was inflated fraudulently included testimony of expert witness that appraiser failed to comply with applicable standards and used inappropriate properties and comparables); *United States v. Musgrave*, 483 F.2d 327, 336 (5th Cir. 1973) ("The crucial evidence which exposed the inflated appraisals consisted of expert opinion testimony. . . ."). Furthermore, in her deposition, the Plaintiff testified that she did not ask for a copy of the Gibson proposal prior to the January 11, 2001 closing. (Nov. 25, 2008 Meeks-Owens Dep. Trans., Doc. 33, Exs. 1 & 2 at 76:1-2.) Plaintiff also testified that her belief that Defendant Gibson's appraisal overvalued her property was based on an assumption and was a "guess". (*Id.* at 76:15-22.)

In her briefs in opposition, Plaintiff cites to prior testimony from an earlier state criminal proceeding against Defendant Annette Peterson in which Ms. Dana Kleintop

indicated that as an employee of the Parisi/Kishbaugh companies she and other employees had falsified sales agreements, inflated sales prices, and used HUDs to disguise the fact that the borrowers were not providing down payments. (Doc. 44, Ex. 1, at 79.) Ms. Kleintop also testified concerning various conversations she had with Defendant Peterson concerning these activities, record keeping, and a Pennsylvania Attorney General investigation. (*See id*. at 46-75.) The Court, however, notes that Ms. Kleintop made only general statements about the fraudulent practices she witnessed as an employee of the Parisi/Kishbaugh companies and provided no testimony pertaining to the Plaintiff in this case. Nor did Ms. Kleintop ever mention Lisa Marie Gibson or Lisa Marie's Appraisal Service. Moreover, Ms. Kleintop's testimony concerned conversations she had in the summer of 2004, over three (3) years after Plaintiff purchased the property at issue in this suit.

Thus, the Court finds that there is no evidence in this case that either Defendant Lisa Marie Gibson or Lisa Marie's Appraisal Service undertook any improper action when appraising Plaintiff's property prior to the January 11, 2001 closing. For this reason the Court will grant the Defendants' motions for summary judgment with respect to Counts I, II, and III of Plaintiff's Complaint.

While the absence of any evidence showing that the pre-closing appraisal overvalued Plaintiff's property provides the Court with sufficient grounds to grant summary judgment on Plaintiff's RICO claims, the Court also notes that Plaintiff has failed to support her conspiracy claims on other grounds. In particular, the Court observes that in her November 25, 2008 deposition the Plaintiff was asked several questions pertaining to Defendant Peterson and Mountain Valley Abstract. (Doc. 33, Exs. 1 & 2.) In response to these questions Plaintiff clearly indicated that she had no knowledge of any facts suggesting that Defendant Peterson

had knowledge of an inflated price for the property (*Id.* at 20:21-21:3), played any role in setting the price for the property (*id.* at 21:9-21:11), had any role in appraising the property (*id*. at 36:19-21), or conspired with any of the other Defendants in this action (*id*. at 37:1-13). Furthermore, Plaintiff was asked whether Ms. Peterson made any misrepresentations or omissions or actively concealed from the Plaintiff that she was purchasing a home at a fraudulently inflated price, and Plaintiff succinctly replied "I don't know." (*Id.* at 60:14-21.)

Similarly, when Plaintiff was asked for a factual basis to support her allegation that Indymac was aware of problems with inflated appraisals in Monroe County, Pennsylvania, Plaintiff stated that she did not know of any information providing Indymac with notice that there were problems with appraisals in Monroe County. (Doc. 37, at 7; Doc. 33, Exs. 1 & 2, at 77:2-5, 78:23-79:12.) Likewise, when the Plaintiff was asked about her allegations that Indymac furthered the alleged conspiracy by failing to follow established underwriting procedures during the origination process of Plaintiff's loan, she was unable to identify any underwriting guidelines that Indymac failed to follow and was unable to identify any fraudulent documents issued by Indymac. (Doc. 37, at 8; Doc. 33, Exs. 1 & 2, at 78:12-22.) The Plaintiff also testified that, when she signed the loan documents, she was aware of the terms of her loan with Indymac, including the loan's nine and one-half percent (9.5%) interest rate. (Doc. 37, at 9; Doc. 33, Exs. 1 & 2, at 78:12-22.) Plaintiff also testified that at the time she entered into her mortgage with Indymac she was able to afford the monthly payments. (Doc. 37, at 9; Doc. 33, Exs. 1 & 2, at 24:3-7.)

In response to the current motions, Plaintiff argues that "IndyMac Bank failed to exercise due diligence in verifying the accuracy of the appraisal and the credentials of Lisa Marie Gibson" and that "IndyMac Bank . . . knew that the Poconos and specifically Monroe

County have had a high incidence of mortgage foreclosures, and that some of these foreclosures were due to fraud." (*Id.*)  In support of her allegations and arguments, Plaintiff cites to a June 14, 2004 statement by Donald J. Bisenius, Senior Vice President of Credit Policy and Portfolio Management for Freddie Mac, before the United States House of Representatives Subcommittee on Capital Markets, Insurance and Government Sponsored Enterprises.  In this statement Mr. Bisenius noted "serious loan origination improprieties and fraudulent activities associated with certain loans made on properties located in the Pocono Mountains of Pennsylvania."  (Appx., Doc. 44, Ex. 1, at 103.)  Plaintiff also cites to a August 20, 2001 "industry letter" from Paul T. Peterson, Executive Vice President, Single-Family Group at Freddie Mac to "All Freddie Mac Sellers and Servicers" concerning "Allegations of loan origination improprieties and fraud" that notes "highly publicized allegations of improprieties in connection with loan originations in certain areas of the Pocono mountains of eastern Pennsylvania."  (*Id.* at 117-118.)  Plaintiff also relies heavily on Ms. Kleintop's testimony indicating that the Parisi/Kishbaugh companies had previously engaged in fraudulent practices with regard to home loans in Monroe County although this testimony does not reference Defendants Indymac Bank or Lisa Marie Gibson or include any facts specifically pertaining to Plaintiff's mortgage.  (Doc. 44, at 6-7.)

      Having reviewed all of the evidence in a light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact that would allow a reasonable jury to find that any of the Defendants participated in a RICO conspiracy against Plaintiff.  In her deposition, the Plaintiff was presented the opportunity to identify any facts supporting her allegations against the Defendants and repeatedly stated that she was unaware of any such facts.  Moreover, in response to the current motions for summary judgment, Plaintiff simply

reiterates the allegations in her Complaint and attempts to support these claims by referencing generalized Congressional testimony and a mortgage industry publication, both published well after Plaintiff entered into her mortgage, to support her contention that the actions of the Defendants give "rise to an *inference*" of RICO conspiracy. (Doc. 44, at 6)(emphasis added.) Such unsubstantiated, conclusory statements are insufficient to create a genuine factual dispute. *See Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 325) ("a nonmoving party must adduce more than a mere scintilla of evidence in its favor. . . and cannot simply reassert factually unsupported allegations contained in its pleadings. . .."). Plaintiff's belief that she was defrauded, without more, is insufficient to survive a motion for summary judgment.

## CONCLUSION

The Court finds that Plaintiff has not adduced evidence revealing any questions of material fact that would allow a reasonable jury to return a verdict in favor of Plaintiff on her Count I and II RICO claims and her Count III claim under the UTPCPL. For this reason, the Court will grant Defendants' motions for summary judgment (Docs. 32, 35, 39).

An appropriate Order follows.

| | |
|---|---|
| August 13, 2009 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMASINA YVETTE MEEKS-OWENS | CIVIL ACTION NO. 3:07-CV-059 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF INDYMAC BANK, F.S.B., et. al. | |
| Defendants. | |

## ORDER

**NOW**, this 13th day of August, 2009, **IT IS HEREBY ORDERED** that:

1. Defendants Mountain Valley Abstract and Annette Peterson's Motion for Summary Judgment (Doc. 32) is **GRANTED.**
2. Defendant Federal Deposit Insurance Corporation, As Receiver of Indymac Bank, F.S.B.'s Motion for Summary Judgment (Doc. 35) is **GRANTED**.
3. Defendants Lisa Marie's Appraisal Service and Lisa Marie Gibson's Motion for Summary Judgment (Doc. 39) is **GRANTED**.
4. The Clerk of the Court is instructed to mark this case **CLOSED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge